IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

_____
                                                )
In re:                                          )        Chapter 11
                                                )
THE SCOOTER STORE HOLDINGS,                     )        Case No. 13-10904 (PJW)
INC., et al.,                                   )        Hrg Date: Oct. 10, 2013 10:30 am (ET)
                                                )        Obj. Deadline: Oct. 3, 2013 4:00 pm (ET)
                Debtors.                         )        Jointly Administered
_____)


**UNITED STATES' MEMORANDUM SUPPORTING MOTION
FOR RELIEF FROM THE AUTOMATIC STAY TO SET OFF
MUTUAL PREPETITION DEBTS AND RELATED RELIEF**

STUART F. DELERY
Assistant Attorney General
Civil Division

CHARLES M. OBERLY, III
United States Attorney

J. CHRISTOPHER KOHN
Director, Commercial Litigation Branch

TRACY J. WHITAKER
LLOYD H. RANDOLPH
MICHAEL R. SEW HOY
RICHARD DREW
Attorneys

U.S. Department of Justice-Civil Division
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, DC 20044
Tel:  (202) 307-3571
Fax: (202) 514-9163
michael.r.sew.hoy@usdoj.gov

September 12, 2013

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ............................................................. 2

RELEVANT BACKGROUND .................................................................. 2

    Amounts Debtors Owe Under Prepetion Fraud Settlement ................................................. 3

    Additional Amounts Owed For Prepetition DMAC Overpayments ................................... 5

    Resumption, After Initial Freeze, of CMS Payments Pursuant to Stipulation Permitting Set-Off of Postpetition Payments for Prepetition Services ................................................. 6

ARGUMENT ............................................................................................ 7

I. CMS IS ENTITLED TO SET OFF MUTUAL PREPETITION DEBTS ................................. 7

    A.  The Prepetition CMS Debt and Future Untabulated Debtors' Prepetition Amounts Are Mutual Debts ............................................................. 9

    B.  The Prepetition CMS Debt and the Debtors' Prepetition Amounts and Untabulated Debtors' Prepetition Amounts Are For Prepetition Debts ......... 11

    C.  The Proposed Setoff Does Not Fall Within Any Exceptions In Code Section 553 And Is Consistent With The Stipulation ................................................. 14

    D.  The CMS Setoff Is Justified On Equitable Grounds ...................................... 15

II. THE AUTOMATIC STAY SHOULD BE LIFTED TO PERMIT SETOFF BECAUSE CMS LACKS ADEQUATE PROTECTION FOR ITS INTEREST IN FUTURE UNTABULATED DEBTORS' PREPETITION AMOUNTS ..................................................................... 16

III. ALTERNATIVELY, CMS IS ENTITLED TO ADEQUATE PROTECTION IN THE AMOUNT OF THE SETOFF ........................................................................... 21

CONCLUSION ........................................................................................ 22

# TABLE OF AUTHORITIES

## CASES

Aetna Cas. & Surety Co. v. LTV Steel Co. (In re Chateaugay Corp.,),
94 F.3d 772 (2d Cir. 1996)....................................................................... 8, 11

Amoco Prod. Co. v. Fry, 118 F.3d 812 (D.C. Cir. 1997) .............................. 8

Bank of Maryland v. Strumpf, 516 U.S. 16 (1995) ................................. Passim

Bevill, Bresler & Schulman Asset Mgmt. Corp., 896 F.2d 54 (3d Cir. 1990) .......................... 8, 9

Blanton v. Prudential-Bache Sec. (In re Blanton), 105 B.R. 321 (Bankr. E.D. Va. 1989)........... 16

Bohack Corp. v. Borden, Inc., 599 F.2d 1160 (2nd Cir. 1979) ...................................... 9

Braniff Airways, Inc. v. Exxon Co., U.S.A., 814 F.2d 1030 (5th Cir. 1987) .............................. 11

Carolco Television, Inc. v. Nat'l Broad. Co. (In re DeLaurentiis Etnm't Group Inc.),,
963 F.2d 1269 (9th Cir. 1992) ......................................................................... 9

CDI Trust v. U.S. Elecs., Inc. (In re Commc'n Dynamics, Inc.),,
382 B.R. 219 (Bankr. D. Del. 2008) ................................................................. 15

Cherry Cotton Mills v. United States, 327 U.S. 536 (1946) ........................................ 11

Claybrook v. Autozone Texas, L.P. (In re American Remanufacturers, Inc.),,
451 B.R. 349 (Bankr. D. Del. 2011) ............................................................... 8, 13

Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV,209 F.3d 252 (3d Cir. 2000)............... 9, 21

Gratiot v. United States,40 U.S. 336 (1841) ...................................................... 7

Gulfcoast Medical Supply, Inc. v. Secretary, HHS, 468 F.3d 1347 (11th Cir.2006) .................... 3

Holber v. Suffolk Constr. Co.,(In re Red Rock Servs. Co.), 480 B.R. 576
(Bankr. E.D. Pa. 2012)........................................................................... 11, 17

In re Calore Express, 288 F.3d 22 (1st Cir. 2002) ............................................... 15

In re Corland Corp., 967 F.2d 1069 (5th Cir. 1992) ............................................. 17

In re Delta Air Lines, 341 B.R. 439 (Bankr. S.D.N.Y. 2006)..................................... 11

In re Elcona Homes Corp., 863 F.2d 483 (7th Cir. 1988)............................................................. 15

In re Manville Forest Prods. Corp., 43 B.R. 293 (Bankr. S.D.N.Y. 1984)................................... 13

In re Mason, 79 B.R. 786 (Bankr. N.D. Ill. 1987) ........................................................................ 21

In re Metro. Hosp., 110 B.R. 731 (Bankr. E.D. Pa. 1990)..................................... 8, 11, 12, 14, 16

In re New York City Shoes, Inc., 78 B.R. 426 (Bankr. E.D. Pa. 1987)........................................ 21

In re Nuclear Imaging Sys., 260 B.R. 724 (Bankr. E.D. Pa. 2000) ......................................... 8, 16

In re Oakwood Homes Corp., 449 F.3d 588 n.19 (3d Cir. 2006) ................................................. 13

In re Orlinski, 140 B.R. 600 (Bankr. S.D. Ga. 1991) ................................................................... 17

In re Stienes, 285 B.R. 360 (Bankr. D.N.J. 2002) ................................................................. 21, 22

In re Tel. Warehouse, Inc., 259 B.R. 64 (Bankr. D. Del. 2001) ............................................ 11, 12

In re Whimsy, Inc., 221 B.R. 69 (S.D.N.Y. 1998)........................................................................... 8

Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399 (3d Cir. 1993)................... 10

La Lomia v. United States (In re Art Metal U.S.A., Inc.), 109 B.R. 74 (Bankr. D.N.J. 1989) .... 10

Lee v. Schweiker, 739 F.2d 870 (3d Cir. 1984).............................................................................. 7

Marre v. United States, 117 F.3d 297, 302 (5th Cir. 1997) ........................................................... 8

Maximum Comfort Inc. v. HHS, 512 F.3d 1081 (9th Cir. 2007) ................................................... 3

McCarty v. Nat'l Bank of Alaska, N.A. (In re United Marine Shipbuilding, Inc.),,
198 B.R. 970 (Bankr. W.D. Wash. 1996) ....................................................................................... 9

Modern Settings, Inc. v. Prudential-Bache Sec., Inc., 936 F.2d 640 (2d Cir. 1991) ................... 10

Nationwide Mut. Ins. Co. v. Optel, Inc., (In re Optel, Inc.), 60 Fed. Appx. 390 (3d Cir. 2003).. 13

Neurological Assocs. - H. Hooshmand v. Bowen, 658 F. Supp. 468 (S.D. Fla. 1987) ................ 16

Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392 (9th Cir. 1996) .................................... 8

N.J. Nat'l Bank v. Gutterman (In re Applied Logic Corp.), 576 F.2d 952 (2d Cir. 1978) .......... 15

Ogle v. Fid. & Deposit Co. of Md., 586 F.3d 143 (2nd Cir. 2009) ............................................. 11

Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.,),
209 F.3d 125 (2nd Cir. 2000)........................................................................ 11

Sonnax Indus., Inc. v. Tri Component Prods. Corp., (In re Sonnax Indus., Inc.),
907 F.2d 1280 (2d Cir. 1990)....................................................................... 17

Stewart Foods, Inc. v. Broecker (In re Stewart Foods, Inc.), 64 F.3d 141 (4th Cir. 1995) .......... 12

Studley v. Boylston Nat'l Bank, 229 U.S. 523 (1913) ................................................. 8

The Scooter Store, Inc. v. Leavitt,,Case No. SA-05-CA-0033-RF (W.D. Tex. July 17, 2007) ..... 4

Tradex, Inc. v. United States (In re IML Freight Inc.), 65 B.R. 788 (Bankr. D. Utah 1986) ....... 10

Tri County Home Health Servs., Inc.,230 B.R. 106 (Bankr. W.D. Tenn. 1999)......................... 16

Turner v. United States (In re G.S. Omni Corp.), 835 F.2d 1317 (10th Cir. 1987)...................... 9

United States v. Gerth, 991 F.2d 1428 (8th Cir. 1993)......................................... 11, 12

United States v. Maxwell, 157 F.3d 1099 (7th Cir. 1998)............................................ 9

United States v. Munsey Trust Co. of Washington, D.C., 332 U.S. 234 (1947) .............................

United States v. Norton, 717 F.2d 767 (3d Cir. 1983)................................................ 15

United States v. Tafoya, 803 F.2d 140 (5th Cir. 1986)................................................ 8

Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.,),  973 F.2d 1065 (3d Cir. 1992) ............... 7, 9

## STATUTES

11 U.S.C. § 361............................................................................. 22

11 U.S.C. § 362.............................................................................. 7

11 U.S.C. § 362(a)(7)................................................................... 2, 16, 21

11 U.S.C. § 362(d) ...................................................................... 2, 17

11 U.S.C.§ 362(g) ........................................................................... 17

11 U.S.C. § 363.............................................................................. 7

11 U.S.C. § 553 ................................................................................................ passim

28 U.S.C. § 157 ...................................................................................................... 2

28 U.S.C. § 1334 .................................................................................................... 2

31 U.S.C. § 3716 ................................................................................................. 5, 8

31 U.S.C. § 3729 .................................................................................................... 3

42 U.S.C. § 1395cc(j) ............................................................................................ 2

42 U.S.C. §§ 1395gg(b)(1)(A) ........................................................................... 5, 8

42 U.S.C. §§ 1395j-1395w-4 ................................................................................. 3

42 U.S.C. §§ 1395m .................................................................................... 2, 3, 5

42 U.S.C. 1395u ................................................................................................ 3, 8

42 U.S.C. § 1395w–3 ........................................................................................... 17

42 U.S.C. § 1395y(a)(1)(A) ................................................................................... 5

42 U.S.C. §§ 1395gg(b)(1)(A) ............................................................................... 5

42 U.S.C. §§ 1395ddd(f)(2)(A) .......................................................................... 5, 8

42 U.S.C. §§ 1395kk ............................................................................................. 3

## <u>REGULATIONS</u>

42 C.F.R. §§ 405.371 .373 .................................................................................. 5, 8

42 C.F.R. § 405.378(b)(2) ..................................................................................... 6

42 C.F.R. §405.379 ............................................................................................ 5, 8

42 C.F.R. § 405.922 ............................................................................................... 3

42 C.F.R. § 410 ..................................................................................................... 5

42 C.F.R. § 414.408(e)(1) .................................................................................... 20

42 C.F.R. § 414.408(e)(8) & (j)(1)-(2) ........................................................... 20, 21

42 C.F.R. § 414.414(b)(4) ........................................................................... 18

42 C.F.R. § 414.422 ............................................................................... 18, 19

42 C.F.R. § 414.422(g)(2) ...................................................................... 19, 20

42 C.F.R. § 414.423(l)(1) ............................................................................ 21

42 C.F.R. §§ 421.404(c)(2) ........................................................................... 3

42 C.F.R. §§ 424.500-424.570 ...................................................................... 2

42 C.F.R. § 424.58 ....................................................................................... 2

## **TREATISES AND OTHER MATERIALS**

4 <u>Collier on Bankruptcy</u> ¶ 502.03 (16th ed. 2013) ...................................... 13

5 <u>Collier on Bankruptcy</u> ¶ 553.03[d] (16th ed. 2013) .......................... 8, 13

5 <u>Collier on Bankruptcy ¶ 553.06[5]</u> (16th ed. 2013) ......................... 21, 22

H.R. Rep. No. 95–595, at 352–54, U.S. Code Cong. & Admin. News 1978, ...................... 13, 21

<u>Restatement (Second) of Contracts</u> § 289 (1981) ..................................... 10

2 Samuel Williston, <u>Williston on Contracts</u> §§ 320, 336 (3d ed. 1959) ...................................... 10

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

_____

In Re:          )      Chapter 11

                              )

THE SCOOTER STORE HOLDINGS,    )      Case No. 13-10904 (PJW)

INC., et al.,                    )      Hrg Date: Oct. 10, 2013 10:30 am (ET)

                              )      Obj. Deadline: Oct. 3, 2013 4:00 pm (ET)

       Debtors.           )      Jointly Administered

_____)

## UNITED STATES' MEMORANDUM SUPPORTING MOTION
## FOR RELIEF FROM THE AUTOMATIC STAY TO SET OFF
## MUTUAL PREPETITION DEBTS AND RELATED RELIEF

Due to debtors'[1] failure correct defects in their business operations and dramatically

diminished future prospects, the equity cushion for payment of the prepetition claims of the

---

[1] The debtors (each, a "Debtor") in these cases, along with the last four digits of each Debtor's federal tax identification number, are: The SCOOTER Store Holdings, Inc. (7246); The SCOOTER Store – Albuquerque, L.L.C. (3265); The SCOOTER Store – Atlanta, L.L.C. (9883); The SCOOTER Store – Austin, Ltd. (4716); The SCOOTER Store – Baltimore, L.L.C. (9884); The SCOOTER Store – Baton Rouge, L.L.C. (9886); The SCOOTER Store – Birmingham, L.L.C. (9887); The SCOOTER Store – Boca Raton, L.L.C. (9889); The SCOOTER Store – Boston, L.L.C. (9893); The SCOOTER Store – Charleston, L.L.C. (9894); The SCOOTER Store – Charlotte, L.L.C. (9902); The SCOOTER Store – Chicago, L.L.C. (2368); The SCOOTER Store – Concord, L.L.C. (9906); The SCOOTER Store – Dallas, L.L.C. (4717); The SCOOTER Store – Dayton, L.L.C. (8678); The SCOOTER Store – Denver, L.L.C. (9909); The SCOOTER Store – Des Moines, L.L.C. (1260); The SCOOTER Store – Detroit, L.L.C. (2358); The SCOOTER Store – Grand Rapids, L.L.C. (1291); The SCOOTER Store – Green Bay, L.L.C. (1832); The SCOOTER Store – Greenville, L.L.C. (9911); The SCOOTER Store – Hartford, L.L.C. (9912); The SCOOTER Store – Houston, Ltd. (4718); The SCOOTER Store – Indianapolis, L.L.C. (8684); The SCOOTER Store – Jackson, L.L.C. (9914); The SCOOTER Store – Jacksonville, L.L.C. (9916); The SCOOTER Store – Kansas City, L.L.C. (8655); The SCOOTER Store – Knoxville, L.L.C. (9921); The SCOOTER Store – Las Vegas, L.L.C. (0038); The SCOOTER Store – Levittown, L.L.C. (9926); The SCOOTER Store – Lincoln, L.L.C. (N/A); The SCOOTER Store – Little Rock, L.L.C. (6425); The SCOOTER Store – Los Angeles, L.L.C. (1294); The SCOOTER Store – Louisville, L.L.C. (9930); The SCOOTER Store – Lubbock, Ltd. (4720); The SCOOTER Store – Madison, L.L.C. (1829); The SCOOTER Store – Minneapolis, L.L.C. (9932); The SCOOTER Store – Mobile, L.L.C. (1466); The SCOOTER Store – Nashville, L.L.C. (9939); The SCOOTER Store – Oklahoma City, L.L.C. (6430); The SCOOTER Store – Orlando, L.L.C. (9943); The SCOOTER Store – Paterson, L.L.C. (9949); The SCOOTER Store – Philadelphia, L.L.C. (9945); The SCOOTER Store – Phoenix, L.L.C. (9950); The SCOOTER Store – Pittsburgh, L.L.C. (9952); The SCOOTER Store – Portland, L.L.C. (1922); The SCOOTER Store – Raleigh Durham, L.L.C. (6134); The SCOOTER Store – Richmond, L.L.C. (8676); The SCOOTER Store – Rochester, L.L.C. (9954); The SCOOTER Store – Sacramento, L.L.C. (1298); The SCOOTER Store – Salt Lake City, L.L.C. (1921); The SCOOTER Store – San Antonio, Ltd. (4724); The SCOOTER Store – San Diego, L.L.C. (1296); The SCOOTER Store – San Francisco, L.L.C. (1293); The SCOOTER Store – Schenectady, L.L.C. (9958); The SCOOTER Store – Seattle, L.L.C. (1918); The SCOOTER Store – Shreveport, L.L.C. (9961); The SCOOTER Store – Springfield, L.L.C. (1834); The SCOOTER Store – St. Louis, L.L.C. (6975); The SCOOTER Store – Toledo, L.L.C. (8681); The

Centers for Medicare & Medicaid Services ("CMS")[2] for certain debtors' improper Medicare reimbursements has been or will soon be dissipated. Consequently, the United States, on behalf of its Secretary of Health and Human Services ("HHS") and CMS, respectfully submits this memorandum in support of its September 12, 2013 motion pursuant to 11 U.S.C. § 362(d) for an order lifting the stay imposed by 11 U.S.C. § 362(a)(7) to permit CMS to set off under 11 U.S.C. § 553 amounts owed to CMS by certain debtors from amounts that CMS owes to those debtors.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## RELEVANT BACKGROUND

The Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 15, 2013 (the "Petition Date"). Of the 72 Debtors, approximately 54 are enrolled with CMS as suppliers (the "Medicare Enrolled Debtors") of durable medical equipment ("DME"), including (as Debtors' names suggest) power wheelchairs.[3] *See* Sworn Declaration dated September 12, 2013 of Michael T. Abel (filed concurrently with and in support of the Motion) ("Abel Decl.") ¶ 3 & Attachment A (identifying each Debtor that is an enrolled DME supplier in

---

SCOOTER Store – Tulsa, L.L.C. (6436); The SCOOTER Store – West Virginia, L.L.C. (8672); The SCOOTER Store – Wichita, L.L.C. (N/A); The SCOOTER Store – Wilkes-Barre, L.L.C. (9962); The SCOOTER Store, Inc. (7905); The SCOOTER Store – USA, Inc. (0608); The SCOOTER Store – Development, L.L.C. (5073); The SCOOTER Store Financial Services, L.L.C. (5481); The SCOOTER Store Aviation, L.L.C. (7185); TSS Management Company, Inc. (4241); TSS Investments, Inc. (4242); and The Scooter Store, Ltd. (0039) (collectively the "Debtors," and individually a "Debtor"). The Debtors' mailing address is 1650 Independence Drive, New Braunfels, Texas 78132.

[2] CMS is an operating component of HHS and is responsible for the administration of the Health Insurance for the Aged and Disabled program, otherwise known as Medicare. The Medicare program was established under Title XVIII of the Social Security Act, 42 U.S.C.§§ 1395-1395kkk ("the Medicare Act").

[3] To submit claims for reimbursement to Medicare, suppliers must enroll in Medicare. 42 U.S.C. § 1395cc(j); 42 C.F.R. §§ 424.500–424.570. To obtain and retain Medicare billing privileges as a DME supplier, a supplier must comply with DME supplier standards set forth at 42 C.F.R. § 424.57, and must be surveyed by a CMS-approved accrediting organization to determine whether the supplier meets CMS quality standards. 42 U.S.C. § 1395m(a)(20); 42 C.F.R. §§ 424.58.

Medicare).  For DME supplied by Medicare Enrolled Debtors to Medicare beneficiaries,[4] CMS

pays these Debtors through one of its four Medicare Administrative Contractors (each, a

"DMAC").[5]  DMACs process tens of millions of claims per year.[6]

### Amounts Debtors Owe Under Prepetion Fraud Settlement

The Debtors owe CMS $13,125,000 to resolve certain prepetition CMS overpayments to

the Debtors.  On May 11, 2007, in connection with their participation in Part B of Medicare, the

Debtors, including "The SCOOTER Store, Inc., … its current and former parent corporations,

direct and indirect subsidiaries, brother and sister corporations, divisions, and affiliates, and the

successors and assigns of any of them," entered into a Settlement of Complaint under the False

Claims Act, 31 U.S.C. § 3729 *et seq*., with the United States and a Relator under the False

Claims Act (the "Settlement," attached as Attachment A to Sworn Declaration dated June 7,

2013 of Robert K. DeConti (filed concurrently with and in support of the Motion) ("DeConti

Decl.") ¶ 2).[7]  Under the Settlement, the Debtors and Douglas T. Harrison, their founder,

---

[4]  Certain Debtors provide services under Part B of Medicare.  Part B, 42 U.S.C. §§ 1395j–1395w-4, establishes a
voluntary supplemental insurance program for Medicare beneficiaries.  It pays for physician services and other types
of health items and services, including DME, such as power wheelchairs, supplied by the Debtors here.  Entities that
furnish DME and related items to Medicare beneficiaries are known as "suppliers."  *See* 42 U.S.C. § 1395m.

[5]  As DME suppliers, the Medicare Enrolled Debtors submit claims to, and receive Medicare payment and other
Medicare services from, the DMAC assigned to administer claims for DME in a particular geographic region in
which the Medicare beneficiary receiving the DME resides.  42 U.S.C. §§ 1395m(a)(12); 1395u, 1395kk-1;
42 C.F.R. § 421.404(c)(2).  There are four geographic DMACs, 42 C.F.R. § 421.210(c), all of which process the
claims of one or more of the Medicare Enrolled Debtors.

[6]  *See* Fact Sheet, Original Medicare (Fee-For-Service) Appeals Data – 2010, available at:
https://www.cms.gov/Medicare/Appeals-and-Grievances/OrgMedFFSAppeals/Downloads/Factsheet2010.pdf
(noting that the four DMACs processed approximately 75 million claims in 2010).  For reasons of administrative
efficiency, they authorize payment on claims immediately upon receipt of the claims, so long as the claims do not
contain glaring irregularities.  *Maximum Comfort Inc. v. HHS*, 512 F.3d 1081, 1084 (9th Cir. 2007) (citing *Gulfcoast
Medical Supply, Inc. v. Secretary, HHS*, 468 F.3d 1347, 1349 (11th Cir.2006)).  *See also*, 42 U.S.C. § 1395u(c)(2);
42 C.F.R. § 405.922.  Contractors "later may conduct audits to ensure that payments were made in accordance with
Medicare criteria.  If the carrier discovers that payments were made for equipment not covered by the Medicare Act,
it may assess an overpayment and recoup the overpaid amount from the supplier."  *Maximum Comfort*, 512 F.3d at
1083; *see* 42 C.F.R. § 421.200(d).

[7]  The U.S. District Court for the Western District of Texas entered the Settlement and dismissed the relevant claims
on July 17, 2007.  *See The Scooter Store, Inc. v. Leavitt*, Case No. SA-05-CA-0033-RF, Docket No. 159 (Order

3

President, and Chief Executive Officer (*see* Settlement at 1, ¶ II.B), also entered into a five-year Corporate Integrity Agreement ("CIA," attached as Attachment C to the DeConti Decl.) with the Office of the Inspector General for the Department of Health and Human Services. *See* Settlement at 9, ¶ 10. The CIA, in turn, required the Debtors to engage an Independent Review Organization ("IRO") to review annually claims submitted to Medicare by the Debtors. *See* CIA at 8, ¶ D.1-2.

As a result of the findings of the IRO, on June 6, 2012, the Debtors entered into an Extended Repayment Agreement (the "ERA," attached as Attachment A to Sworn Declaration dated June 17, 2013 of Deborah A. Taylor (filed concurrently with and in support of the Motion) ("Taylor Decl.") ¶ 2) with CMS under which the Debtors and their future subsidiaries and affiliates agreed to repay $19,500,000 to CMS over five years for self-identified overpayments related to services provided to Medicare beneficiaries between May 11, 2009 and May 11, 2011. *See* ERA at 1 and ERA, Ex. A (identifying each of the Debtors listed on Exhibit A as an "Obligor" to the agreement). The self-identified overpayments related to all of the Medicare Enrolled Debtors, which are included in the list on Exhibit A of the ERA. *See* ERA, Ex. A. The ERA sets out the "agreements and understandings" between CMS and "The Scooter Store – Holdings Inc and its current and future subsidiaries and affiliates" regarding "a return of self-identified Medicare overpayments," in the amount of $19.5 million. *See* ERA at 1.[8] After an initial payment on June 7, 2012, the $19.5 million was to be repaid in monthly payments over five years, beginning July 1, 2012. *Id.* Ex. B. Fifty-five of the 72 Debtors, and all of the

---

Granting Joint Stipulation of Dismissal) (W.D. Tex. July 17, 2007). *See* DeConti Decl. ¶ 4.

[8] The ERA further identifies other obligations of the Debtors regarding their participation in Medicare, including: (1) reducing the number of supplier numbers (while agreeing that the Debtors were not required to take any action that would "jeopardize its ability to conduct Medicare, Medicaid or other medical supply related business operations"), ERA ¶ 3; and (2) providing "information [to CMS] related to" confirming and crediting payments made by the Debtors, *id.* ¶ 6.

Medicare Enrolled Debtors, are listed as "Obligors" on the ERA to repay the $19.5 million debt. *See* ERA, at 1 and ERA, Ex. A.

As the Debtors concede,[9] as of the Petition Date, $13,666,667 was outstanding on the $19,500,000 debt. *See* Abel Decl. ¶ 4. As of September 4, 2013, approximately $13,125,000 was outstanding on the $19,500,000 debt (the "**ERA Claim**"). *Id.*

### Additional Amounts Owed For Prepetition DMAC Overpayments

Apart from the **ERA Claim**, the DMACs have determined that as of June 28, 2013, the Debtors owe CMS $5,207,832.53 (the "**DMAC Overpayments**", and together with the "**ERA Claim**," the "**Prepetition CMS Debt**") for additional overpayments not covered under Medicare.[10] *See* Abel Decl. ¶ 10.[11]

---

9 *See, e.g.*, Statement of Financial Affairs Schedules, (D.I. 257), at 9; *id.* Schedule H; Petition of The Scooter Store – Charleston, L.L.C., Case No. 13-10915 (PJW), Consolidated List of Creditors Holding 30 Largest Unsecured Claims, (D.I. 1).

10 The Medicare statute does not permit Medicare to pay for items and services that "are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A); *see* 42 C.F.R. § 410.12(a)(3). In addition, since 2003, Congress has stipulated that Medicare may pay for power wheelchairs of the type supplied by the Medicare Enrolled Debtors only if a physician or other clinician conducts a face-to-face examination of the beneficiary and writes a prescription for that power wheelchair. 42 U.S.C. § 1395m(a)(1)(E)(iv). The supplier may not provide a power wheelchair to a beneficiary until it receives the prescription and supporting documentation from the physician or clinician who performed the face-to-face examination (which must be received within 45 days after the date of the examination). 42 C.F.R. § 410.38(c)(iv). Medicare does not cover power wheelchairs for a beneficiary's convenience for mobility outside of his or her home. To the contrary, it covers power wheelchairs only if they are medically necessary because: (1) the beneficiary has a mobility limitation that significantly impairs his or her ability to perform one or more mobility-related activities of daily living, such as toileting, feeding, dressing, grooming, and bathing in the customary locations in his or her home; (2) this limitation cannot be resolved by use of an appropriately fitted cane or walker; and (3) the patient cannot use an optimally configured manual wheelchair for this purpose. CMS Medicare Learning Network Fact Sheet: Power Mobility Devices (September 2011) at 2, available at: http://www.cms.gov/Research-Statistics-Data-and-Systems/Monitoring-Programs/CERT/Downloads/PMD_DocCvg_FactSheet_ICN905063_Sept2011.pdf. If a DME supplier receives disqualified payments from CMS, CMS and its DMACs may collect such Medicare overpayments through administrative setoff and recoupment. *See* 42 U.S.C. §§ 1395gg(b)(1)(A), 1395ddd(f)(2)(A); 31 U.S.C. § 3716; 42 C.F.R. §§ 405.371-.373, 405.379. DME suppliers agree to this recoupment in their applications to enroll in the Medicare program. CMS Form 855S, Medicare Enrollment Application, Durable Medical Equipment, Prosthetics, Orthotics and Supplies (DMEPOS) Supplier (1/13) at § 15.A.6.; available online at: http://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms855s.pdf.

11 The column entitled "DMAC Prepetition Overpayments at 6/28/2013" to Attachment B of the Abel Declaration identifies the amounts of the DMAC Overpayments for each Medicare Enrolled Debtor. While overpayments

## Resumption, After Initial Freeze, of CMS Payments Pursuant to Stipulation Permitting Set-Off Of Postpetition Payments For Prepetition Services

On April 17, 2013, at CMS's direction, the DMACs imposed an administrative "freeze" of further Medicare payments for prepetition services to the Medicare Enrolled Debtors pending a request to set-off the "frozen" monies against the Debtors' prepetition debts to CMS.  *See* Abel Decl. ¶ 14.  Pursuant to a stipulation (D.I. 74) (the "Stipulation") between the Debtors and CMS, the parties agreed to "preserve CMS's asserted setoff rights" and the status quo:  CMS agreed to lift the freeze temporarily so that Debtors could continue receiving payments from CMS and its DMACs in exchange for, among other things, the right to set off the Debtors' prepetition debts to CMS against any postpetition payments CMS owes the Debtors.  *See* Stipulation Ex. A, ¶¶ 1, 2, 2.a.  Any setoff by CMS may not "exceed the prepetition amounts paid to the Debtors after the petition date."  *Id.* ¶2.a. The Stipulation is binding on the Debtors' "successors and assigns".  *Id.* ¶ 8.  CMS and the Debtors entered into a further stipulation (D.I. 425), wherein the parties agreed to a standstill on certain actions.  After a few extensions, the standstill expired September 10, 2013.

As of the Petition Date, CMS owed to the Medicare Enrolled Debtors a then-uncertain amount for their prepetition services to Medicare beneficiaries.  Pursuant to the Stipulation, CMS, through the DMACs, paid $10,109,242.30 in aggregate to the Medicare Enrolled Debtors on their prepetition Medicare reimbursement claims between April 15 and August 30, 2013 (the "**Debtors' Prepetition Amounts**").  *See* Abel Decl. ¶ 12.[12]  The average daily payment for the 99 business days of this period is $102,113.56.  The DMACs have continued to make payments

---

accrue interest from the time the demand letter is sent, 42 C.F.R. § 405.378(b)(2), the DMAC Overpayments exclude interest.

[12]  The specific amount paid to each Medicare Enrolled Debtor under the Debtors' Prepetition Amounts is provided in column "Postpetition Claim Payments for Prepetition Services (or Debtors' Prepetition Amounts) as of 8/30/2013" of Attachment B to the Abel Declaration.  *See also* Abel Decl. ¶ 12.

on claims for prepetition services since August 30, 2013, in amounts as yet untabulated (the "**Untabulated Debtors' Prepetition Amounts**").

## ARGUMENT

## I.     CMS IS ENTITLED TO SET OFF MUTUAL PREPETITION DEBTS

Section 553(a) of the Bankruptcy Code preserves a creditor's right to set off mutual debts between the debtor and creditor as long as both debts arose before the commencement of the bankruptcy case and are in fact mutual.  *See Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir. 1992).[13]  "Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor."  *Id.* (quoting *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)).  While the Code does not create a right to setoff, it recognizes and preserves rights that exist under non-bankruptcy law.  *See, e.g.*, *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995).

The United States has a well-established common law right of setoff.  *United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234, 239 (1947) (citing *Gratiot v. United States*, 40 U.S. 336, 370 (1841)) ("The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'"); *Amoco Prod. Co. v. Fry*, 118 F.3d 812, 817 (D.C. Cir. 1997) ("Like private creditors, the federal government has long possessed the right of offset at common law."); *Aetna*

---

[13]  Section 553(a) provides that:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a).

*Cas. & Surety Co. v. LTV Steel Co. (In re Chateaugay Corp.)*, 94 F.3d 772, 779 (2d Cir. 1996);

*United States v. Tafoya*, 803 F.2d 140, 141 (5th Cir. 1986); *In re Nuclear Imaging Sys.*, 260 B.R.

724 (Bankr. E.D. Pa. 2000). The United States' right to setoff "is broad and 'exists independent

of any statutory grant of authority to the executive branch.'" *Marre v. United States*, 117 F.3d

297, 302 (5th Cir. 1997) (quoting *Tafoya*, 803 F.2d at 141).[14]

Setoff is an equitable right of a creditor "to deduct a debt it owes to a debtor from a claim

it has against the debtor arising out of a separate transaction." *In re Whimsy, Inc.*, 221 B.R. 69,

72 (S.D.N.Y. 1998). The "rule allows parties that owe mutual debts to state the accounts

between them, subtract one from the other and pay only the balance." *In re Bevill, Bresler &*

*Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57 (3d Cir. 1990). The rule is grounded on avoiding

the absurdity of "making A pay B when B owes A." *Strumpf*, 516 U.S. at 18; *Bevill*, 896 F.2d at

57 (citing *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)); 5 *Collier* ¶ 553.01.

Bankruptcy does not impair the United States' setoff right, as section 553 "preserve[s] the

common-law right of setoff arising out of non-bankruptcy law." *Newbery Corp. v. Fireman's*

*Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996); *Univ. Med. Ctr.*, 973 F.2d at 1079. "The

Bankruptcy Code neither expands nor constricts the common law right of setoff. Rather, it

---

[14]  CMS also has an express right to collect Medicare overpayments through administrative recoupment and/or setoff under the Medicare statute and regulations. *See* 42 U.S.C. §§ 1395gg(b)(1)(A), 1395u(c)(2); 31 U.S.C. § 3716; 42 C.F.R. §§ 405.371- 405.373, 405.379; *see also See In re Metro. Hosp.*, 110 B.R. 731, 741 (Bankr. E.D. Pa. 1990) (Medicare statute incorporates Medicare's statutory right of setoff). Although outside of bankruptcy, CMS will generally only recoup after the second level of appeal, 42 U.S.C. § 1395ddd(f)(2)(A); 42 C.F.R § 405.379, "the commencement of a case under the Bankruptcy Code operates as an automatic acceleration of all debts, which then coalesce into the various creditors' 'claims,'" and, accordingly, "the unmatured status of an obligation is no barrier to setoff under section 553 for the entire unpaid balance of the obligation." 5 *Collier on Bankruptcy* ("*Collier")* ¶ 553.03[d] (16th ed. 2013) ; *Claybrook v. Autozone Texas, L.P. (In re American Remanufacturers, Inc.)*, 451 B.R. 349, 367 (Bankr. D. Del. 2011) (Walsh, J.) ("Upon a debtor's bankruptcy filing, the principal amount of all claims against the debtor is accelerated."). Moreover, as explained above, the United States also has an independent common law right of setoff, to which 42 U.S.C. § 1395ddd(f)(2)(A) and 42 C.F.R § 405.379 do not generally apply.

preserves . . . whatever right exists outside bankruptcy." *United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998).

Setoffs in bankruptcy are "'generally favored,' and a presumption in favor of their enforcement exists." *Carolco Television, Inc. v. Nat'l Broad. Co. (In re DeLaurentiis Etnm't Group Inc.)*, 963 F.2d 1269, 1277 (9th Cir. 1992) (internal citation omitted); *accord, Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2d Cir. 1979) (and cases cited therein); *McCarty v. Nat'l Bank of Alaska, N.A. (In re United Marine Shipbuilding, Inc.)*, 198 B.R. 970, 978 (Bankr. W.D. Wash. 1996). "The right of setoff is one which is grounded in fairness. It would be unfair to deny a creditor the right to recover an established obligation while requiring the creditor to fully satisfy a debt to a debtor. Hence, the right of setoff is universally recognized." *Turner v. United States (In re G.S. Omni Corp.)*, 835 F.2d 1317, 1318 (10th Cir. 1987).

The Third Circuit has stated that, "to maintain a right of setoff under section 553," the creditor must prove the following: (1) "A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case"; (2) "[t]he creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case," and (3) "[t]he debt and the claim are mutual obligations." *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 262-63 (3d Cir. 2000).

### A. The Prepetition CMS Debt and Future Untabulated Debtors' Prepetition Amounts Are Mutual Debts

CMS's proposed setoff involves mutual debts. Obligations between a debtor and creditor are mutual when both obligations are held by the same parties, in the same right or capacity. *See Matter of Bevill*, 896 F.2d at 59. In other words, "[t]he creditor's debt must be owed to the estate of the debtor and the estate's debt must be owed to the creditor." *La Lomia v. United States (In re Art Metal U.S.A., Inc.)*, 109 B.R. 74, 78 (Bankr. D.N.J. 1989) (citing *Tradex, Inc. v. United*

*States (In re IML Freight Inc.)*, 65 B.R. 788, 793 (Bankr. D. Utah 1986)); *see also Modern Settings, Inc. v. Prudential-Bache Sec., Inc.*, 936 F.2d 640, 648 (2d Cir. 1991).

Here, the Debtors, including all of the Medicare Enrolled Debtors, are liable to CMS for the **ERA Claim**. The ERA sets out the "agreements and understandings" between CMS and "The Scooter Store – Holdings Inc and its current and future subsidiaries and affiliates" regarding "a return of self-identified Medicare overpayments," in the amount of $19.5 million. *See* Taylor Decl., Attachment A, ERA, page 1. The Medicare Enrolled Debtors (approximately 54 of the 72 Debtors) are each defined as an "Obligor" to the ERA. *See* ERA, page 1; *id.* Ex. A (defining "Obligors" to the ERA as "The Scooter Store – Holdings Inc. and its current and future subsidiaries and affiliates" and listing those entities on Exhibit A to the ERA). Accordingly, each Medicare Enrolled Debtor owes CMS the full balance of the **ERA Claim**. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993) (noting that "[t]wo general authorities on the subject [of joint and several liability] have identified a strong trend in favor of a principle that … co-obligors on a contract are jointly and severally liable for its performance" and citing 2 Samuel Williston, *Williston on Contracts* §§ 320, 336, at 649-657, 697-706 (3d ed. 1959) (while at early common law the rule was that co-obligors were jointly liable, the modern trend both in statute and judicial decision is towards implying joint and several liability) and *Restatement (Second) of Contracts* § 289, at 410-11 (1981)). Additionally, each Medicare Enrolled Debtor is liable to CMS for its respective **DMAC Overpayment**.

For **Debtors' Prepetition Amounts** and for proper future **Untabulated Debtors' Prepetition Amounts**, CMS had/ has an obligation to pay the Medicare Enrolled Debtors. This obligation is mutual because it relates to services and equipment that the Medicare Enrolled

Debtors provided prior to the Petition Date.[15]  *See Cherry Cotton Mills v. United States*, 327 U.S. 536, 539 (1946).

### B. The Prepetition CMS Debt and the Debtors' Prepetition Amounts and Untabulated Debtors' Prepetition Amounts Are For Prepetition Debts

A claim which arises prepetition may be set off against a credit which also arises prepetition.  *See, e.g.*, *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1035-36 (5th Cir. 1987)*; Aetna Cas. & Surety Co.*, 94 F.3d at 781; *In re Delta Air Lines*, 341 B.R. 439, 443 (Bankr. S.D.N.Y. 2006); *Metro. Hosp.*, 131 B.R. at 288.  Claims "arise" for bankruptcy purposes when all transactions or acts necessary for liability occur.  *Ogle v. Fid. & Deposit Co. of Md.*, 586 F.3d 143, 146 (2nd Cir. 2009) (citing *Olin Corp. v. Riverwood Int'l Corp.  (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 129 (2nd Cir. 2000)); *Braniff*, 814 F.2d at 1036; *Holber v. Suffolk Constr. Co. (In re Red Rock Servs. Co.)*, 480 B.R. 576, 614 (Bankr. E.D. Pa. 2012); *In re Tel. Warehouse, Inc.*, 259 B.R. 64, 69 (Bankr. D. Del. 2001) (citing *United States v. Gerth*, 991 F.2d 1428, 1433 (8th Cir. 1993)) (concluding that "[f]or setoff purposes, a debt arises when all transactions necessary for liability occur, regardless of whether the claim was contingent, unliquidated, or unmatured when the petition was filed.").

Since the Petition Date, a large part of the Medicare Enrolled Debtors' claims for reimbursement – including the **Debtors' Prepetition Amounts** and **Untabulated Debtors' Prepetition Amounts** – are for services which it provided prepetition (because the dates of service are prior to petition date) and are amounts due prepetition, even though payment for these prepetition services was made postpetition.  *See generally Stewart Foods, Inc. v. Broecker (In re*

---

[15]  While each Medicare Enrolled Debtor is subject to setoff for the entire amount of the **ERA Claim**, CMS will only setoff against each Medicare Enrolled Debtor for the **DMAC Overpayment** in the amount of that Debtor's owed portion of the **DMAC Overpayment**.

*Stewart Foods, Inc.)*, 64 F.3d 141, 146 (4th Cir. 1995) ("[T]he fact that the payments became due

after the bankruptcy filing does not alter the conclusion that the payments are pre-petition

obligations.").  An enrolled DME supplier's right to payment arises when it provides items

and/or services to Medicare beneficiaries.  *See Metro. Hosp.*, 110 B.R. at 737  (disqualified

payments for prepetition services constitute prepetition debts of CMS to the debtor).  Thus, even

though the actual Medicare payment may be made postpetition, the payment is considered

prepetition because it was for prepetition services.  The Medicare Enrolled Debtors furnish DME

to Medicare beneficiaries via sale or lease and bill Medicare for that DME.  *See* Abel Decl. ¶¶ 3,

5.  For DME, the date of service on a claim is, in general, the delivery date of the DME, or the

monthly anniversary of the delivery date for the monthly lease payments.  Medicare Program

Integrity Manual, CMS Publication 100-08, Chapter 5, § 5.13, available online at:

http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/pim83c05.pdf;

Medicare Claims Processing Manual, CMS Publication 100-04, Chapter 20, §§ 210-11, available

online at: http://www.cms.gov/Regulations-and-

Guidance/Guidance/Manuals/Downloads/clm104c20.pdf.  Because the **Debtors' Prepetition**

**Amounts** and the **Untabulated Debtors' Prepetition Amounts** stem from payments that

DMACs would make to the Debtors for prepetition services rendered and/or prepetition

agreements, they constitute prepetition obligations.  *In re Tel. Warehouse, Inc.*, 259 B.R. at 69

(citing *Gerth*, 991 F.2d at 1433) (concluding that "[f]or setoff purposes, a debt arises when all

transactions necessary for liability occur, regardless of whether the claim was contingent,

unliquidated, or unmatured when the petition was filed.").

The **Prepetition CMS Debt** also arose prior to the Petition Date.  *First*, the **ERA Claim**

arose on June 6, 2012, almost ten months before the Petition Date, and is based on Debtors'

prepetition conduct.  Accordingly, it is a prepetition obligation.  It makes no difference that part

of the **ERA Claim** may be unmatured.  Indeed, "the commencement of a case under the

Bankruptcy Code operates as an automatic acceleration of all debts, which then coalesce into the

various creditors' 'claims,'" and, accordingly, "the unmatured status of an obligation is no

barrier to setoff under section 553 for the entire unpaid balance of the obligation."  5 *Collier*

¶ 553.03[d]; *Nationwide Mut. Ins. Co. v. Optel, Inc. (In re Optel, Inc.)*, 60 Fed. Appx. 390, 394

(3d Cir. 2003) ("'It is a basic tenet of the Bankruptcy Code that bankruptcy operates as the

acceleration of the principal amount of all claims against the debtor.'") (quoting *In re Manville*

*Forest Prods. Corp.*, 43 B.R. 293, 297 (Bankr. S.D.N.Y. 1984) (internal quotation marks and

alterations omitted)); *Claybrook v. Autozone Texas, L.P. (In re American Remanufacturers, Inc.)*,

451 B.R. 349, 367 (Bankr. D. Del. 2011) (Walsh, J.) ("Upon a debtor's bankruptcy filing, the

principal amount of all claims against the debtor is accelerated."); *see also In re Oakwood*

*Homes Corp.*, 449 F.3d 588, 603 n.19 (3d Cir. 2006) (quoting H.R. Rep. No. 95–595, at 352–54,

U.S. Code Cong. & Admin. News 1978, pp. 5963, 6307–10; citing 4 *Collier* ¶ 502.03

(recognizing automatic acceleration "whether or not a clause in a prepetition agreement provides

that a bankruptcy filing accelerates the maturity date")).

    Nor does an absence of an acceleration clause in the ERA prohibit the United States'

setoff rights.  As this court has explained, "[e]ven absent the [agreement's] acceleration clause,

[the debtor] would be obligated to pay the full amount outstanding under the [agreement].  Upon

a debtor's bankruptcy filing, the principal amount of all claims against the debtor is accelerated[,

and setoff is permitted as to the full amount of liability]."  *Claybrook*, 451 B.R. at 367

(permitting creditor's setoff against full amount of principle outstanding under agreement owed

by debtor even though agreement under which debt arose lacked acceleration clause and full amount was not yet due).

*Second*, the **DMAC Overpayments** are based on overpayment amounts to the Medicare Enrolled Debtors for services rendered prepetition, *see* Abel Decl. ¶ 10, and, accordingly, are prepetition debts owed to CMS by the Medicare Enrolled Debtors. *Metro. Hosp.*, 110 B.R. at 737 (holding that underpayment arose prepetition where "[a]ll the medicare services and the costs attendant … occurred prepetition," even though HHS's "final determination [as to the underpayment] was made postpetition").

### C. The Proposed Setoff Does Not Fall Within Any Exceptions In Code Section 553 And Is Consistent With The Stipulation

None of the exceptions contained in section 553 apply to CMS's right of setoff requested set forth in this Motion. CMS's claims against the Debtors have not been disallowed, *see* 11 U.S.C.§ 553(a)(1); CMS did not acquire its claims from an entity other than the Debtors, *see id.* § 553(a)(2); and the debts owed by CMS were not incurred for the purpose of obtaining a right of setoff against the Debtors, *see id.*§ 553(a)(3).

Moreover, under the Stipulation, the United States is entitled to set off **Prepetition CMS Debt** owed by the Debtors (i.e., the **ERA Claim** and the **DMAC Overpayments**) against CMS's postpetition payments to the Debtors, provided that the postpetition setoff against the Debtors does not exceed the "prepetition amounts paid to the Debtors after the petition date." Stipulation ¶ 2.a. The "prepetition amounts paid to the Debtors after the petition date" through August 30, 2013, - *i.e.*, the **Debtors' Prepetition Amounts** - are listed in the column entitled "Postpetition Claim Payments for Prepetition Services (or Debtors' Prepetition Amounts) as of 8/30/2013" of Attachment B to the Abel Declaration. Each of the **Debtors' Prepetition Amounts** listed on Attachment B is less than the **ERA Claim**, both individually and in the aggregate. CMS

continues to make postpetition payments to the Medicare Enrolled Debtors. Abel Decl. ¶ 16.

Accordingly, CMS is entitled to set off the full amounts listed in the column entitled

"Postpetition Claim Payments for Prepetition Services (or Debtors' Prepetition Amounts) as of

8/30/2013" of Attachment B to the Abel Declaration, for an aggregate total of $10,109,242.30,

from its postpetition payments to the Medicare Enrolled Debtors. CMS is also entitled to set off

the amounts of the Medicare Enrolled Debtors' individual **DMAC Overpayments** against

CMS's postpetition payments to that particular Medicare Enrolled Debtor. In other words, the

Court should authorize CMS to cease paying the Medicare Enrolled Debtors until the amount of

their subsequent and proper reimbursement submissions for prepetition services exceed the CMS

Prepetition Debt.

### D. The CMS Setoff Is Justified On Equitable Grounds

Because the United States has demonstrated its right to setoff, the motion should be

granted. The Third Circuit, however, has concluded that the exercise of setoff is permissive and

lies within the equitable discretion of the trial court.[16] (The United States respectfully disagrees,

and other Circuits have questioned whether a bankruptcy court may deny setoff for equitable

reasons.[17])

The Motion's requested setoff should be granted even under the Third Circuit's standard

because it serves the public interest. The government "has a critical interest in maintaining the

integrity of the Medicare program for the benefit of providers, patients, and taxpayers generally."

---

[16] *See United States v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983); *CDI Trust v. U.S. Elecs., Inc. (In re Commc'n Dynamics, Inc.)*, 382 B.R. 219, 227-28 (Bankr. D. Del. 2008) ("[A] creditor's right of setoff may be denied only if there is some basis in equity to do so.").

[17] *See, e.g.*, *In re Calore Express*, 288 F.3d 22, 36-37 (1st Cir. 2002) (questioning a bankruptcy court's power to deny setoff for equitable reasons); *In re Elcona Homes Corp.*, 863 F.2d 483, 487-88 (7th Cir. 1988) (questioning limits of bankruptcy court's discretion to disallow setoff); *N.J. Nat'l Bank v. Gutterman (In re Applied Logic Corp.)*, 576 F.2d 952, 957-58 (2d Cir. 1978) ("The rule allowing setoff ... is not one that courts are free to ignore when they think application would be unjust.").

*Neurological Assocs. - H. Hooshmand v. Bowen*, 658 F. Supp. 468, 473 (S.D. Fla. 1987); *see Tri County Home Health Servs., Inc.*, 230 B.R. 106, 113 (Bankr. W.D. Tenn. 1999) ("HHS does not operate Medicare, ultimately, in HHS' own interest. Rather, this public agency is charged with protecting the interests of Medicare beneficiaries and with the effective management of the public funds entrusted to the Medicare program."). The Medicare program should not have to pay additional funds to debtors who have already incurred substantial Medicare overpayments because "[d]epletion of the Medicare trust fund by continuing to pay a Medicare provider to whom an excess has already been paid violates HHS' public charge to effectively administer the Medicare Trust Fund." *Tri County Home Health Servs., Inc.*, 230 B.R. at 113. Nor has the government engaged in any inequitable, illegal, or fraudulent act in connection with the Debtors' participation in the Medicare program which would preclude the equitable relief sought. *See Blanton v. Prudential-Bache Sec. (In re Blanton)*, 105 B.R. 321, 337 (Bankr. E.D. Va. 1989) (and cases cited therein). No court has suggested that the Secretary may not utilize 11 U.S.C. § 553 to set off prepetition Medicare overpayments and underpayments. *See Metro. Hosp.*, 110 B.R. at 737. Thus, equity mandates that CMS be permitted to exercise its valid right of setoff on behalf of the government. *See also Nuclear Imaging Sys., Inc.*, 260 B.R. at 739-40 (affirming government's right of setoff of Medicare receivables).

## II.	THE AUTOMATIC STAY SHOULD BE LIFTED TO PERMIT SETOFF BECAUSE CMS LACKS ADEQUATE PROTECTION FOR ITS INTEREST IN FUTURE UNTABULATED DEBTORS' PREPETITION AMOUNTS

While setoff is stayed by the Bankruptcy Code, 11 U.S.C. § 362(a)(7), the Court "shall grant relief from the stay" "for cause, including the lack of adequate protection of an interest in property" of the party seeking stay relief. 11 U.S.C. § 362(d)(1); *see also In re Corland Corp.*,

967 F.2d 1069, 1076 (5th Cir. 1992) ("The automatic stay, however, does not defeat the right of setoff; rather, setoff is merely stayed pending an 'orderly examination of the debtor's and creditor's rights.'") (internal citation omitted).

By demonstrating a right to setoff, *see supra* at 7-16, CMS has made a *prima facie* showing of cause for relief from the stay under 11 U.S.C. § 362(d)(1). *Holber*, 480 B.R. at 617; *In re Orlinski*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991). The Debtors now have the burden of proof in opposing the motion for relief from the stay, including the burden of ultimate persuasion. 11 U.S.C.§ 362(g); *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990); *Holber*, 480 B.R. at 617. Pending a ruling on its setoff motion, CMS is entitled to withhold temporarily an amount equal to the funds in question. *See Strumpf*, 516 U.S. 16. CMS is secured to the extent of its set-off rights arising from the CMS Prepetition Debt. *See supra* at 7-16.

Unfortunately, CMS lacks adequate protection for its interest in future **Untabulated Debtors' Prepetition Amounts**. While these amounts are ostensibly secured by the right to set off **CMS Prepetition Debt,** the Debtors' ability to repay that debt is vanishing. The Debtors have failed to cure the breach of their so-called Round 1 contracts with CMS,[18] Sworn

---

[18] Since 1997, CMS has progressively shifted to awarding DME supplier contracts through competitive bidding programs for particular geographic areas. Balanced Budget Act of 1997, Pub. L. No. 105–33, § 4319, 111 Stat. 251, 392-394 (codified at 42 U.S.C. § 1395w–3 (1998)); 2003 Medicare Prescription Drug, Improvement and Modernization Act, Pub. L. No. 108–173, § 302(b)(1), 117 Stat. 2066, 2224-25 (2003) (codified as amended at 42 U.S.C. § 1395w–3). CMS implemented the first round of competitive bidding contracts in nine competitive bidding areas on January 1, 2011. *See* Competitive Bidding Implementation Contractor (CBIC), Round 1 Rebid, DMEPOS Competitive Bidding Program (Apr. 17, 2012), available online at: http://www.dmecompetitivebid.com/palmetto/cbicrd1rebid.nsf/DocsCat/Home. A supplier's eligibility to receive and hold competitive bidding contracts is subject to numerous conditions provided in applicable regulations and CMS's Request for Bids, *see* § 414.414(b)(4) (incorporating the "terms and conditions" of the Request for Bids in the "[b]asic supplier eligibility" requirements) (Request for Bids available online at: http://www.dmecompetitivebid.com/Palmetto/Cbic.nsf/files/R2_RFB.pdf/$FIle/R2_RFB.pdf), including the obligation to provide equipment to "any beneficiary who maintains a permanent residence in, or who visits" an assigned competitive bidding area, 42 C.F.R. § 414.422(e)(1).

Declaration dated September 12, 2013 of Michael P. Keane (filed concurrently with and in support of the Motion) ("Keane Decl.") ¶ 9 , and CMS will not execute the Round 2 contracts, *see id.* ¶ 12, as further explained below.  Moreover, because of the Debtors' breach of their supplier obligations, CMS has exercised its regulatory authority to terminate the Debtors' existing competitive bidding contracts to provide DME for Medicare beneficiaries.  For the same reason, the Debtors cannot receive new competitive bidding contracts.  Consequently Debtors cannot provide new services to Medicare beneficiaries in a substantial portion of the United States.  Further evidencing the drying up of Debtors' business, over the last five months, the amounts of their submitted Medicare reimbursement claims have dropped by approximately 58% percent from $ 2,163,149.54 to $ 924,484.16.  *See* Abel Decl. ¶ 17.  For similar reasons, Debtors are not likely to reorganize.  Indeed, so far, the Debtors have not identified a stalking horse bidder for the sale of their assets, a hearing on which is currently scheduled for October 3, 2013.

And, as mentioned above, the Debtors are or will likely be ineligible to participate in substantial parts of the Medicare program.  The Medicare Enrolled Debtors submitted a proposed contract to supply DME in the Round 1 bidding areas, which became effective when signed by CMS.  Medicare Competitive Bidding Program Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) Round 1 Rebid Contract.  Keane Decl. ¶ 4, Attachment A.  The contract incorporates the terms of the Code of Federal Regulations, including part 414, subpart F pertaining to the competitive bidding program.  *Id.* at 3.  In particular, the contract invitation specifically required each supplier to furnish the listed DME to its entire assigned competitive bidding areas.  *Id.* at 5.  The invitation, *id.*, specifically incorporated 42 C.F.R. § 414.422, which allows CMS to terminate the contract if the supplier breaches its terms, *id.* 414.422(g)(2).

CMS gave notice to the Medicare Enrolled Debtors on March 25, 2013 that the agency was terminating the Debtors' Round 1 contracts. The notice cited their failure to supply equipment to beneficiaries in all of its competitive bidding areas. Keane Decl. ¶ 5, Attachment B. The letter noted CMS's authority under 42 C.F.R. § 414.422 to terminate the contract as well as the Debtors' right to appeal the termination by submitting a corrective action plan or requesting a hearing. *Id.*

The Debtors submitted a corrective action plan for its performance in the Round 1 competitive bidding areas on April 19, 2013. Keane Decl. ¶ 6, Attachment C. On August 1, 2013, CMS informed the Debtors that the corrective action plan was inadequate and that they were allowed one opportunity to revise the plan, due within ten business days. Keane Decl. ¶ 7, Attachment D. The Debtors submitted their response on August 14, 2013. Keane Decl. ¶ 8, Attachment E. On September 11, 2013, CMS again rejected the Debtors' corrective action plan as insufficient and informed them that termination of the Round 1 contracts would take effect on 45 days from September 11, 2013. Keane Decl. ¶ 9, Attachment F.

After issuing the Round 1 competitive bidding contracts for nine geographic areas, CMS instituted Round 2 of the competitive bidding program, issuing contracts for a much larger portion of the country, covering more than 90 bidding areas. CBIC, Round 2 & National Mail-Order, DMEPOS Competitive Bidding Program (last visited September 3, 2013), available online at: http://www.dmecompetitivebid.com/palmetto/cbicrd2.nsf/DocsCat/Home. In January 2013, certain of the Debtors received initial contract invitations to participate in the Round 2 bidding areas, scheduled to be implemented on July 1, 2013. Keane Decl. ¶ 10, Attachment G. However, on April 9, 2013, CMS informed the Debtors that the agency would not sign the proposed contracts because the Debtors were not in compliance with the Request for Bids due to

their inability to "accept new patients."  *See*  Keane Decl. ¶ 11, Attachment H.  Upon a breach of

a competitive bid contract, CMS may "[p]reclude the contract supplier from participating in the

competitive bidding program."  42 C.F.R. § 414.422(g)(2)(iv).  On September 11, 2013, after

CMS's rejection of the Debtor's revised Round 1 corrective action plan, CMS confirmed to the

Debtors that they will not execute the Round 2 contracts.  Keane Decl. ¶ 12, Attachment I.

Because CMS did not award Debtors Round 2 competitive bid contracts, the Debtors

could not provide new services to Medicare beneficiaries in the Round 2 bidding areas after

Round 2 contracts took effect in July 2013.  *See* 42 C.F.R. § 414.408(e)(1).  The Debtors may

continue to service and bill for rented equipment already provided to Medicare beneficiaries

living in these areas, *id.* § 414.408(j)(1)-(2), but they cannot supply items to new Medicare

customers.  *Id.* § 414.408(e)(1).  The Debtors, therefore, cannot obtain new Medicare

beneficiaries as customers in Round 2 regions but can only continue to service existing

customers, 42 C.F.R. § 414.408(e)(8) & (j)(1)-(2), and will likely be unable to bill for any

customers, old or new, in Round 1 regions, 42 C.F.R. § 414.423(l)(1).  As a result, the Debtors'

revenues from CMS will continue to decrease, imperiling CMS's setoff rights.  Accordingly,

CMS should be permitted to exercise its setoff rights now.

The Debtors' proposed sale of substantially all of their assets by early October 2013

amplifies the necessity for modification of the stay to protect CMS's setoff rights.  This sale

could include the Medicare receivables, *i.e.*, the payments CMS makes to the Debtors

postpetition, which are the very funds that CMS would set off against the prepetition debts owed

by the Debtors.  If the Medicare receivables are sold, CMS's setoff rights may be threatened

through no fault of its own.  *See Folger Adam*, 209 F.3d at 262-63.

Accordingly, this Court should lift the stay imposed by 11 U.S.C.§ 362(a)(7) to permit CMS to set off from future **Untabulated Debtors' Prepetition Amounts** the amounts of the **ERA Claim** and the **DMAC Overpayments**.

The automatic stay should be lifted to permit this setoff even though Medicare Enrolled Debtors may succeed on some appeals of denials of requests to pay claims they have submitted to the DMACs.[19]  In the event the Debtors prevail, in whole or in part, in their appeal of any particular **DMAC Overpayment**, any amounts setoff will be refunded if the **ERA Claim** has been satisfied.

## III.    ALTERNATIVELY, CMS IS ENTITLED TO ADEQUATE PROTECTION

To the extent this Court determines that the United States is entitled to setoff but does not lift the stay to permit such setoff, the United States is entitled to adequate protection.  *See* 5 *Collier* ¶ 553.06[5] ("A creditor stayed from exercising a valid setoff right must be granted 'adequate protection' to protect against diminution in the value of the creditor's interest occasioned by the debtor's use of the property in question."); *In re Mason*, 79 B.R. 786, 788 (Bankr. N.D. Ill. 1987) (same).  Here, the United States' "offset is tantamount to a security interest for [its] benefit."  *See* 5 *Collier* ¶ 553.06[5] n.36 (*citing* H.R. Rep. No. 595, 95th Cong., 1st Sess. 185 (1978)); *In re Stienes*, 285 B.R. 360, 362 (Bankr. D.N.J. 2002); *In re New York City Shoes, Inc.*, 78 B.R. 426, 430, 431 (Bankr. E.D. Pa. 1987) (quasi-security interest acquired by bank through setoff is entitled to adequate protection).  Adequate protection is necessary to "protect against diminution in the value of the [United States'] interest occasioned by the

---

[19]  A DME supplier may appeal an initial determination or an overpayment by seeking a "redetermination" by the DMAC, followed by a "reconsideration" from a different Medicare contractor called a Qualified Independent Contractor ("QIC").  The supplier may then appeal to an Administrative Law Judge ("ALJ"), the Medicare Appeals Council, *see* 42 C.F.R. §§ 405.920-405.1140, and, if the claim meets amount-in-controversy requirements, to federal district court, 42 U.S.C. § 1395ff(b)(1)(A) (incorporating 42 U.S.C. § 405(g)).

[Debtors'] use of the property in question."  5 *Collier* ¶ 553.06[5].  Accordingly, the United States "is entitled to adequate protection in [the setoff] amount."  *Stienes*, 285 B.R. at 362.

The Bankruptcy Code identifies three means by which adequate protection may be provided: (1) making cash payments, (2) providing additional or replacement liens, or (3) "granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."  11 U.S.C. § 361.  Although the United States is amenable to any form that will adequately protect its interest, it does not appear that additional or replacement liens will be possible as all of the Debtors' assets were pledged to The Third Lien Agent (Sun and now Personal Mobility) as adequate protection collateral for the cash collateral agreement.  Cash Collateral Order, ¶ 4 (D.I. 478).  Debtors thus appear to lack unencumbered assets to offer the United States as adequate protection.  And without permission to exercise its setoff rights against Medicare payments to the Debtors, the United States' interest is continually imperiled as the United States pays the Debtors over $100,000 a day, on average.  Consequently, if the Court does not lift the stay to permit setoff, to protect against the erosion of the United States' interest by continued daily Medicare payments to the Debtors, the Court should require the Debtors to provide the indubitable equivalent of the United States' interest in these payments.

## <u>CONCLUSION</u>

For the reasons discussed in this memorandum, this Court should lift the automatic stay to permit the United States to exercise its right of setoff.  Alternatively, should the Court determine that the United States is entitled to setoff, but does not lift the stay to effectuate such setoff, the Court should grant the United States adequate protection.

Dated: September 12, 2013                            Respectfully submitted,

Of Counsel:

WILLIAM B. SCHULTZ
      General Counsel
JAMES C. NEWMAN
      Chief Counsel, Region III
JAN M. LUNDELIUS
Assistant Regional Counsel
Office of the General Counsel
Department of Health and Human Services

STUART F. DELERY
Assistant Attorney General

CHARLES M. OBERLY, III
United States Attorney

J. CHRISTOPHER KOHN
Director, Civil Division

/s/ Michael R. Sew Hoy
TRACY J. WHITAKER
LLOYD H. RANDOLPH
MICHAEL R. SEW HOY
CA Bar No. 243391
RICHARD DREW
U.S. Department of Justice-Civil Division
Commercial Litigation Branch
P.O. Box 875
Ben Franklin Station
Washington, DC 20044
Tel:  (202) 307-3571
Fax: (202) 514-9163
michael.r.sew.hoy@usdoj.gov

**Attorneys for the United States of America, on behalf of the United States Department Health & Human Services and its Centers for Medicare & Medicaid Services**